IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ONSRI CLARK,<br><br>　　　　　　　Plaintiff,<br><br>vs.<br><br>SARPY COUNTY,<br><br>　　　　　　　Defendant. | **8:17CV405**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56. Defendant's Motion for Summary Judgment, Filing No. 47. Plaintiff, Onsri Clark, brought this action alleging employment discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq ("ADA").

## I.　STANDARD OF REVIEW

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Foster v. BNSF Ry. Co.*, 866 F.3d 962, 966 (8th Cir. 2017) (quoting Fed. R. Civ. P. 56(a). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

"The movant bears the initial responsibility of informing the district court of the basis for its motion, 'and must identify those portions of the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042, (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at

323).  If the movant meets the initial burden, "the nonmovant must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'"  *Torgerson*, 643 F.3d at 1042 (quoting *Celotex*, 477 U.S. at 324).  "The nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Torgerson*, 643 F.3d at 1042 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).  "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."  *Barber v. CI Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

## II.    BACKGROUND

Plaintiff is a former employee of defendant Sarpy County (hereinafter Sarpy County).  Sarpy County employed plaintiff at all times material herein.  Plaintiff's duties included the collection, processing, and storage of evidence for law enforcement activities.  At times, this involved handling hazardous materials.

On June 2, 2015, plaintiff was called to a crime scene to assist with the collection of specimens from a marijuana and mushroom grow operation.  Plaintiff contends this was the first time she had been asked to participate in collection from a mushroom grow operation and had not received any training on collection of this type of evidence.  When plaintiff asked for a mask, she was told there were none available on the scene.  An investigator expressed concerns that the materials being collected could make plaintiff

sick, and that an investigator from another law enforcement office had become ill after working on-site at a previous mushroom grow operation. Plaintiff collected multiple large containers of suspected psychedelic mushroom spores and mold.

On June 3, 2015, plaintiff assisted chemists with the collection of samples from the evidence obtained the night before. Plaintiff stated the chemists were not initially concerned with potential health hazards, as evidenced by only one individual putting on a mask while collecting specimens from the mushrooms. A green and white colored mold was uncovered during this time. One of the chemists contacted plaintiff a few hours after leaving the site and told plaintiff not to go near the containers or submit them for testing because the chemist had determined the mold or fungus was contaminated. On June 4, 2015, plaintiff was asked to prepare the evidence for two separate media viewings. Plaintiff wore gloves and a mask during these encounters with the evidence.

Plaintiff began to notice changes in her health, including headaches, muscle pain, and respiratory issues. Plaintiff first saw a physician related to her health concerns on June 8, 2015. Dr. Brett Kettelhut diagnosed plaintiff with acute exposure to mold/fungi and recommended protective gear to prevent further allergen exposure. On June 9, 2015, plaintiff was treated for muscle pain in the emergency room. The next day, plaintiff emailed her supervisor and stated she had been to the emergency room, was not doing well, and would not be in to work that day. Sarpy County officially granted plaintiff's leave as Family and Medical Leave Act ("FMLA") on July 16, 2015. Sarpy County indicated plaintiff's return would be dependent on verification of restrictions preventing her from returning to work, or a designation that she was fit to return to duty.

On July 8, 2015, Sarpy County employed an environmental company to test for and remove any mold found in the plaintiff's various work locations. Those locations included her main office space, a connected evidence room, and off-site evidence garages. Plaintiff began to see a second physician, Dr. Patrick Meyers, on July 13, 2015. Dr. Meyers submitted a report to Sarpy County and recommended all work environments needed to be clear of mold, spores, and mushrooms, and that plaintiff should be restricted from working in environments with those allergens for a time period of at least one month to a potentially indefinite amount of time. On July 15, 2015, Sarpy County received notice from Dr. Kettelhut that plaintiff could immediately return to work in the jail's main medical office. Dr. Meyers also submitted a physical capacity report on July 24, 2019, which stated plaintiff could return to work if the environment was free of mold spores and mushrooms for a period of one month or more. Sarpy County informed plaintiff on July 30, 2015 that the contradictory information from plaintiff's physicians prevented a decision on whether plaintiff could return to work. Sarpy County asked plaintiff to submit documentation from her physicians on an acceptable range of fungi and whether plaintiff would be fit to return to work under those conditions.

Sarpy County notified plaintiff on August 21, 2015 that it had received suggested mold count recommendations from Dr. Meyers and Dr. Kettelhut. Dr. Meyers's August 20, 2015 report stated plaintiff's return would require a mold count of less than $250/m^3$. Dr. Kettelhut's August 17, 2015 report indicated plaintiff could return to work if the total mold count of Alternaria and Cladosporium was 500 or less. Sarpy County determined they could not guarantee either mold spore levels would be met in any of the evidence

technician work locations.  Plaintiff was reassigned to jail reception on August 24, 2015 while waiting for accommodation recommendations from Dr. Kettelhut and Dr. Meyers. Sarpy County specifically requested plaintiff's physicians provide information as to whether plaintiff would be able to perform the essential functions of her role with accommodations, and if so, what accommodations would be required and for how long.

Dr. Kettelhut's initial request for accommodation form, dated August 25, 2015, only stated plaintiff could work in an environment where the mold count was less than 501.  On September 4, 2015, Dr. Meyers completed a Request for Accommodation form stating plaintiff could work in an environment with a mold count lower than 500, but would need an N-95 mask, gloves, and safety goggles if working in an environment with a mold count over 500.  Sarpy County notified plaintiff on September 11, 2015 that they would be unable to provide a reasonable accommodation because they could not guarantee mold spore counts in any of plaintiff's work environments.

On September 21, 2015 Dr. Kettelhut added his belief that plaintiff would be able to tolerate mold exposure with an N5 mask with a P100 filter, safety goggles, gloves, and disposable overalls.  Sarpy County followed up with Dr. Kettelhut for clarification on the levels of mold that would require the accommodations recommended.  On October 20, 2015, Dr. Kettelhut stated the questions asked were beyond his ability answer, and recommended Sarpy County refer their questions to an industrial hygienist or an occupational medicine specialist.

Sarpy County contracted with B2 Environmental, an industrial hygienist, in order to determine what potential accommodations would be necessary.  B2 Environmental

submitted their recommendations to Sarpy County on November 11, 2015. The two individuals responsible for authoring the report held certifications for Industrial Hygiene, Hazardous Materials, and Indoor Environmental Consulting. The report documented a discussion between the Hygienists and Sarpy County managers. The report detailed the personal protective equipment ("PPE") recommended by plaintiff's physician, Dr. Kettelhut, but not the less inclusive PPE recommended by plaintiff's physician, Dr. Meyers. Without outlining its environmental test results B2 Environmental indicated the level of mold spores in a given environment would fluctuate at any given time and there would be no way for Sarpy County to guarantee plaintiff's workspaces would be below the threshold required by her treating physicians. As a result of this uncertainty, B2 Environmental recommended plaintiff wear the PPE suggested by her physician Dr. Kettelhut at all times. The recommended PPE included gloves, goggles, coveralls, and a minimum of an N95 respirator.

Plaintiff saw Dr. Clark at Concentra Medical Center on December 4, 2015. Dr. Kathleen B Dylla performed a review of the plaintiff's pulmonary system specifically related to use of a N95 mask. Dr. Dylla administered a pulmonary function test. She diagnosed plaintiff with chronic reactive airway disease and recommended plaintiff wear an "N95 only."

On January 4, 2016 Dr. Meyers examined the plaintiff for chronic reactive airway disease. He found the plaintiff could return to work on January 11, 2016 with the restriction to wear the N95 mask for eight hours per day. He limited the restriction to six months followed by re-evaluation.

On January 6, 2016 Sarpy County notified plaintiff they had reached a decision regarding her accommodation request. Plaintiff would be able to return to her role as an evidence technician as long as she wore an N95 mask with P100 filters, gloves, disposable coveralls, and goggles during the entire workday. Sarpy County stated it based its accommodation on information received from Dr. Meyers, Dr. Kettelhut, Dr. Clark, and the B2 Environmental report. Plaintiff was eligible to return as soon as Sarpy County obtained the PPE plaintiff would need. On January 8, 2016, plaintiff requested a copy of the B2 Environmental report. She further indicated her belief that the recommended PPE would be unnecessary for her return to her role as an evidence technician. According to plaintiff, her review of the air quality report indicated the only area with a mold spore count in excess of 500 was the off-site storage facilities, which would be the only location requiring full PPE. Plaintiff decided to move forward with the respirator fit test, which was conducted on January 21, 2016.

On January 27, 2016, Dr. Meyers authored an additional Request for Accommodation form. Dr. Meyers stated plaintiff would need two accommodations. First, Dr. Meyers recommended plaintiff wear an N95 respirator mask and gloves in the Sarpy County evidence room. Second, Dr. Meyers indicated plaintiff would need the N95 respirator, gloves, goggles, and coveralls anytime she was in the evidence garages and at all crime scenes. Dr. Meyers noted the restriction was permanent.

Plaintiff returned to her role as an evidence technician on March 14, 2016. Sarpy County required plaintiff to follow the accommodations laid out in their January 6, 2016 letter which required full PPE during the entire workday. Plaintiff complained the

accommodation resulted in her experiencing heat exhaustion, trouble seeing while driving, and humiliation. Plaintiff alleges she experienced harassment upon her return to the evidence room. A supervisor required only plaintiff, and no other employees, to wear a mask in the evidence room, even though it is standard operating procedure for all to wear masks when working in that space. Another supervisor refused to schedule plaintiff for overtime work. An evidence technician monitored plaintiff's actions in the evidence room, refused to train plaintiff on new evidence room procedures, and disclosed plaintiff's illness and accommodations to a Douglas County Sheriff's Office Manager. When plaintiff filed a harassment grievance against this technician, plaintiff was reassigned to an office space in another section of the building and no longer allowed to work in the evidence office. Plaintiff claims this hindered her ability to complete her work.

Plaintiff's evaluating supervisor indicated her work during this time met or exceeded performance standards. Plaintiff remained employed by Sarpy County until December 27, 2016, when she voluntarily ended her employment. Plaintiff exhausted all administrative options through the Nebraska Equal Opportunity Commission ("NEOC") and the Equal Employment Opportunity Commission ("EEOC"). On August 4, 2017, plaintiff received a favorable decision from the Nebraska Workers' Compensation Court, which determined plaintiff was entitled to compensation for periods of her FMLA leave and certain medical expenses.

### III. DISCUSSION

#### a. ADA Discrimination Claims

When there is no direct evidence of disability discrimination, the Court analyzes discrimination claims under a burden-shifting framework. *See McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792, 802 (1973).  Plaintiff has the initial burden to demonstrate a prima facie case of discrimination.  *See Higgins v. Union Pacific Railroad Co.*, 931 F.3d 664, 669 (8th Cir. 2019) (citing *Cody v. Prairie Ethanol, LLC,* 763 F.3d 992, 996 (8th Cir. 2014)).  Upon that showing, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the action.  *McDonnell Douglas,* 411 U.S. at 802.  "'If the defendant provides such a reason, the presumption disappears, and the burden shifts back to the plaintiff to show that the proffered reason was pretext' for discrimination." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873-74 (8th Cir. 2010) (quoting *Ramlet v. E.F. Johnson Co.,* 507 F.3d 1149, 1153 (8th Cir 2007)).

To make a prima facie case of employment discrimination under the ADA, the plaintiff must establish "that [she] '(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of [her] disability.'" *E.E.O.C. v. Product Fabricators, Inc.*, 763 F.3d 963, 969 (8th Cir. 2014); quoting 42 U.S.C.A. § 12112(a).  Summary judgment is proper where a plaintiff fails to establish any element of her prima facie case.  *See Kellogg v. Union Pac. R. Co.*, 233 F.3d 1083, 1086 (8th Cir. 2000).

### 1.  Disabled Person Under the ADA

The first issue to consider is whether plaintiff is a disabled person under the ADA. Plaintiff contends that she suffers from an allergy to mold that impacts her respiratory function.  Sarpy County alleges sensitivity to environmental allergens do not always rise to the level of disability under the ADA, and that plaintiff has failed to provide any evidence

that her breathing is affected to the point of statutory disability.  Defendant's Brief, Filing No. 48 at 9.  Plaintiff claims she has a disability as defined by the ADA.  Plaintiff's Brief, Filing No. 54 at 7.

To meet the definition of disability under the ADA, the plaintiff must show that she "(1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such impairment."  42 U.S.C.A. § 12102(1)(A)-(C).  The impairment must limit a major life activity.  *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002) (overturned on other grounds).  Major Life Activities include, among others, the functions of breathing, working, respiration, and the immune system.  29 C.F.R. § 1630.2(i)(1)(i)-(ii).  Whether a disability is a substantial limitation depends on the extent to which it constrains performance of a major life activity in comparison to the general population.  29 C.F.R. § 1630.2(j)(1)(ii).  The substantial limitation need not "prevent, or significantly or severely restrict" the major life activity."  *Id.*  "'Substantially limits' is not meant to be a demanding standard."  29 C.F.R. § 1630.2(j)(1)(i).  Whether an alleged disability substantially limits an individual's major life activities "shall be construed broadly in favor of expansive coverage."  *Id.*  This analysis requires an individualized assessment.  29 C.F.R. § 1630.2(j)(1)(iv).

A.  *Did plaintiff suffer from an actual disability under the ADA?*

Plaintiff states she is an individual with a disability as defined within the ADA and that this disability impairs her major life activity of breathing.  Plaintiff's Brief, Filing No. 54 at 7.  Plaintiff's brief is silent as to what the claimed disability is but classifies it as an

10

"impairment which effected the major life activity of breathing." *Id.* Defendant characterizes plaintiff's condition as an allergy to fungus/mold. Defendant's Brief, Filing No. 48 at 9. Both parties included several documents from plaintiff's physicians that provide various diagnosis for her respiratory issues.

The dispute is not whether an impairment exists, but whether plaintiff's impairment rises to the level of disability as defined within the ADA. Defendants cite to several examples of cases where allergic sensitivities did not rise to the level of statutory disability. *See Land v. Baptist Med. Ctr.*, 164 F.3d 423, 424-25 (8th Cir. 1999); *McLorn v. Cmty. Health Servs.*, 456 F. Supp. 2d 991, 995-97 (S.D. Ill. 2006); *Watson v. Hughston Sports Med. Hosp.*, 231 F.Supp. 2d 1344, 1349-50 (M.D. Ga. 2002); *Gallagher v. Sunrise Assisted Living of Haverford*, 268 F. Supp. 2d 436, 440-41 (E.D. Pa. 2003). In each of those cases, the allergic reaction was to an object, such as peanuts or latex, that are easily avoided by someone with a known allergy. *Id.* Thus, the allergic exposure did not substantially limit the major life activity of breathing. Because the plaintiffs in those cases could avoid exposure, and thus allergic reactions that would impact breathing, it did not substantially limit the major life activity of breathing. In the case at hand, plaintiff is unable to selectively avoid the allergens in her work environment. The expert retained by Sarpy County required the full PPE because in their expert opinion that there was no way for Sarpy County to control the level of mold in any of plaintiff's working spaces. B2 Environmental Report, Filing No. 49-6. Additionally, Sarpy County sent the plaintiff for a pulmonary examination at the Concentra Medical Center. There Dr. Dylla performed a

pulmonary function test which resulted in a chronic reactive airway diagnosis. Sarpy County has effectively admitted the plaintiff has an impairment which substantially limits her major life activity of breathing.

    B. _Was plaintiff "regarded as" having a disability under the ADA?_

Even if plaintiff's disability does not rise to the level required by the ADA, plaintiff may still succeed under the disability requirement if Sarpy County regarded her as having a disability. Plaintiff argues that there are two examples of having been regarded as having a disability. First, plaintiff's supervisor required plaintiff to wear a mask in the evidence room. NEOC/EEOC Complaint, Filing No. 54-5. Standard procedure is for all employees to wear masks in the evidence room, but they do not. *Id.* Second, a fellow evidence technician allegedly contacted another county's evidence workroom technician to ensure plaintiff was wearing her required PPE in their evidence room. *Id.* The record indicates Sarpy County required plaintiff to wear full PPE for the entirety of her eight-hour workday. Sarpy County's Accommodation Letter, Filing No. 49-4. Sarpy County required this accommodation while driving. NEOC/EEOC Complaint, Filing No. 54-5. Based on these facts, a reasonable fact finder could conclude Sarpy County regarded plaintiff as having a disability.

    **2. Qualified Individual**

Second, plaintiff must prove she was a "qualified individual" under the ADA. A qualified individual is one who can perform the essential functions of the job with or without reasonable accommodation. 42. U.S.C.A. § 12111(8). Plaintiff and Sarpy County do not disagree that plaintiff was a qualified individual able to perform the essential

functions of her job. Their disagreement centers not on plaintiff's qualification, but on the reasonableness of the accommodation needed to allow plaintiff to continue meeting the essential functions of her job.

### 3. Adverse Action

Plaintiff has the burden of demonstrating she suffered adverse employment action as part of her prima facie case. *See Fenney v. Dakota, Minnesota, & Eastern R. Co.*, 327 F.3d 707, 716 (8th Cir. 2003) (citing *Foster v. Andersen, LLP*, 168 F.3d 1029, 1032-33 (7th Cir. 1999). Plaintiff states Sarpy County's requirement of full PPE and forced FMLA leave constitutes adverse action. Plaintiff's Brief, Filing No. 54 at 11. Sarpy County contends their accommodation requirements came from plaintiff's own doctors, and that there was no material change in her employment that would constitute adverse employment action. Defendant's Brief, Filing No. 48 at 14.

Adverse employment action "causes a material change in the terms or conditions of employment." *Fenney,* 327 F.3d at 716-17 (citing *Brown v. Lester E. Cox Med. Ctrs.*, 286 F.3d 1040, 1045 (8th Cir. 2002). "To be 'adverse,' an employment action must do more than merely make an employee unhappy, but it need not always involve termination or even a decrease in benefits or pay." *Brown v. Cox*, 286 F.3d 1040, 1045 (8th Cir. 2002) (quoting *Duffy v. McPhillips,* 276 F.3d 988, 992 (8th Cir. 2002)). A reasonable worker, not just the plaintiff, must find the adverse action was serious enough to "dissuade[ ] a reasonable worker" from participating in protected conduct. *Garrison v. Dolgencorp, LLC,* 939 F.3d 937, 943 (8th Cir. 2019) (quoting *Stewart v. Indep. Sch. Dist. No. 196,* 481 F.3d 1034, 1046 (8th Cir. 2007) (brackets in original).

Plaintiff provided evidence of potential adverse employment action. First, plaintiff stated she was forced to remain on FMLA leave for approximately six weeks, "rather than work with her as required by the ADA." Plaintiff's Brief, Filing No. 54 at 11. In fact, the Nebraska Worker's Compensation Court found her FMLA leave was work related and compensable. Second, plaintiff produced evidence that wearing full PPE made her uncomfortable, created issues with her ability to drive, caused heat exhaustion, and lead to humiliation. NEOC/EEOC Complaint, Filing No. 54-5. The record also reflect that Sarpy County decided to require the plaintiff to wear full PPE throughout the work day regardless of the worksite. The only doctor to make that recommendation recanted his recommendation for a self-proclaimed lack of sufficient expertise. Neither Dr. Myers or Dr. Dylla recommended anything more than a N95 mask unless the plaintiff was inside the evidence room, the evidence garage or gathering contaminated evidence. Plaintiff alleges she became overheated in full PPE. Furthermore, Common sense would lead a trier of fact to understand that anyone wearing full PPE gear throughout the day in an office setting would receive considerable unwanted attention from co-workers. While these acts do not constitute termination or a loss of pay, inhibiting an employee's ability to do their job could constitute a "material change" in the conditions of employment. *Fenney,* 327 F.3d at 716-17. Plaintiff further alleged she was she was not permitted overtime work and was refused certain required training. Filing No. 54-5. Therefore, plaintiff has alleged specific actions by defendants that could constitute adverse employment action.

Because plaintiff has met her burden of production, the burden shifts to Sarpy County to show a legitimate, nondiscriminatory reason for its employment action.

*McDonnell Douglas Corp.*, 411. U.S. at 802. Sarpy County's stated justification for the full PPE requirement was the B2 environmental report's recommendations. Sarpy County's Accommodation Letter, Filing No. 49-4. The report concluded Sarpy County would be unable to consistently guarantee the mold levels in any environment. B2 Environmental Report, Filing No. 49-6. Because Sarpy County could not guarantee any work environments would be below the level required by plaintiff's doctors, it required full PPE as an accommodation. Sarpy County's Accommodation Letter, Filing No. 49-4. Following the then recommendations of plaintiff's treating physicians and an expert report is a legitimate nondiscriminatory reason for the accommodation.

Since Sarpy County has offered a legitimate, nondiscriminatory justification for the employment decision, plaintiff must then show those reasons are pretextual. *Young v. United Parcel Service, Inc.*, 575 U.S. 206, 229 (2015). Plaintiff must show that Sarpy County's proffered reason was false, and that discrimination was the true reason. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993). Plaintiff can demonstrate pretext various ways, including "showing than an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).

Plaintiff alleges the full PPE requirement stems from Sarpy County's fear of the "off-chance" plaintiff might have an allergic reaction to mold. Plaintiff's Brief, Filing No. 54 at 10. Plaintiff asserts this as both an adverse action and as an affirmative defense. *Id.* Essentially, plaintiff argues the full PPE requirement stemmed from fear of a mold reaction and was thus discriminatory. *Id.* Plaintiff relies on a report showing there were

places in the jail that were shown to be under her doctor's recommended mold level.  *Id.* at 11.  While Sarpy County's expert opinion stated Sarpy County could not always guarantee mold levels in all environments, there were times when and places where the mold levels were low and would not require plaintiff to work in the full PPE accommodations.  Therefore, plaintiff has made a facial showing and created a genuine issue of material fact as to whether Sarpy County discriminated against her on the basis of an actual or perceived disability.

### b.  Failure to Provide a Reasonable Accommodation

Plaintiff's failure to accommodate claim turns on whether the accommodation provided by Sarpy County was reasonable.  Plaintiff alleges the accommodation of full PPE in all of plaintiff's work locations was unreasonable, and that not all essential duties she was required to perform would result in the exposure of mold or fungus.  Plaintiff's Brief, Filing No. 54 at 11.  Plaintiff also claims Sarpy County refused to participate in an interactive process in coming to an agreement on the necessary accommodation.  *Id.* at 9.  Sarpy County argues the full PPE requirement was provided by an expert report, requested by plaintiff's own physician, on the opinion that Sarpy County could not guarantee the level of mold in any given workspace.  Defendant's Brief, Filing No. 48 at 17.

For failure to accommodate claims, the plaintiff must establish a prima facie case of discrimination and a failure to accommodate the disability. *See Kelleher v. Wal-Mart Stores, Inc.*, 817 F.3d 624, 631 (8th Cir. 2016) (quoting *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015).  ADA discrimination includes a failure to reasonably accommodate an otherwise qualified employee.  *U.S. Airways, Inc. v. Barnett*,

535 U.S. 391, 396 (2002) (citing 42 U.S.C.A. § 12112(b)(5)(A). EEOC regulations define reasonable accommodation as ". . . [m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). "Rather, reasonable accommodation is by its terms most logically construed as that which, presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." Wood v. Green, 323 F.3d 1309, 1313 (11th Cir. 2003) (quoting Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995)).

The plaintiff has the burden of demonstrating the accommodation is "reasonable on its face." Gardea v. JBS USA, LLC, 915 F.3d 537, 541 (8th Cir. 2019) (quoting U.S. Airways, 535 U.S. at 401). Reasonable accommodation claims are analyzed under a "modified burden-shifting analysis." Fenney v. Dakota, Minn. & E.R.R. Co., 327 F.3d 707, 712 (8th Cir. 2003). If plaintiff makes a facial showing that a reasonable accommodation is possible, the burden of production shifts to Sarpy County to "show it is unable to accommodate [plaintiff]." Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 950 (8th Cir. 1999) (citing Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995)). An accommodation must be reasonable but does not have to be the plaintiff's preferred accommodation. Cravens v. Blue Cross & Blue Shield of Kan. City, 214 F.3d 1011, 1019 (8th Cir. 2000).

Sarpy County sought to accommodate plaintiff by requiring she wear full PPE at all times. Sarpy County's Accommodation Letter, Filing No. 49-4. This included wearing an N-95 respirator, gloves, goggles, and full coveralls. Id. Plaintiff believes a reasonable

17

accommodation would have entailed only requiring full PPE at off-site evidence storage facilities.  Plaintiff's Brief, Filing No. 54 at 8-9.  Plaintiff based this belief on two facts. First, plaintiff's treating physician agreed she would need to wear an N-95 respirator and gloves in the Sarpy County evidence room.  Dr. Meyers' Letter, Filing No. 49-5.  Once the mold spore count reached a level above 500, both doctors agreed additional PPE was needed, but are inconsistent as to the specific additional pieces.  Sarpy County's Accommodation Letter, Filing No. 49-4.  Second, plaintiff reviewed the environmental report, which show the only area with mold to be the off-site storage facilities.  Plaintiff's Brief, Filing No. 54 at 8-9.  Based on that report, in addition to her physician Dr. Meyer's recommendations, plaintiff believed she only needed the additional PPE when in the off-site storage facilities.  Clark Emails to Human Resources, Filing No. 49-12.  Because of this, plaintiff has met her facial burden of production as to whether a reasonable accommodation was possible.

The burden then shifts to Sarpy County to demonstrate it was unable to accommodate plaintiff.  *Fjellestad*, 188 F.3d at 950.  The reasonableness of the accommodation in this case is not whether an accommodation was possible. Sarpy County agrees an accommodation was possible, just not the accommodation desired by the plaintiff.  Defendant's Brief, Filing No. 48 at 20.  Sarpy County is correct that they are not required to give plaintiff the accommodation she prefers. *Cravens,* 214 F.3d at 1019. The issue is whether this accommodation went beyond the bounds of what was necessary in a way that prevented plaintiff from performing the essential functions of her job.  Sarpy County has produced evidence that it was capable of and did accommodate plaintiff.  Sarpy County's Accommodation Letter, Filing No. 49-4.  Sarpy County's experts

concluded the mold spore levels in any given environment could not be guaranteed to be below 500, as required by both of plaintiff's physicians. B2 Environmental Report, Filing No. 49-6. Further, Sarpy County provided evidence of the essential job functions that would potentially put plaintiff into contact with her allergens. Defendant's Reply Brief, Filing No. 55 at 10.

Plaintiff stated the full PPE requirements inhibit her from performing the essential functions of her job, because it causes "heat exhaustion" and difficulties driving. NEOC/EEOC Complaint, Filing No. 54-5. A reasonable accommodation is one that would have *enabled* plaintiff to perform her role as an evidence technician. 29 C.F.R. § 1630.2(o)(1)(ii). Therefore, plaintiff has made a facial showing and created a genuine issue of material fact as to whether Sarpy County failed to reasonably accommodate her.

### c. Workers Compensation Retaliation

The final issue included in the complaint is whether Sarpy County retaliated against the plaintiff for claiming benefits under the Nebraska Workers' Compensation Act, in violation of the public policy of the state of Nebraska. Sarpy County contends plaintiff has failed to show a causal connection existed between plaintiff filing for workers' compensation benefits and the alleged adverse employment action. Defendant's Brief, Filing No. 48 at 26.

The state of Nebraska allows parties to bring an action for retaliatory discharge when the discharge is the result of filing a workers' compensation claim. *Jackson v. Morris Commc'ns Corp.,* 265 Neb. 423, 432, 657 N.W.2d 634, 641 (2003). In order to establish a prima facie case of unlawful retaliation, plaintiff has the burden of demonstrating: "(1) that [she] filed a workers' compensation claim, (2) that [Sarpy County],

took [adverse action against her] and (3) that a causal link existed between the [adverse action] and the workers' compensation claim." *Riesen v. Irwin Indus. Tool Co.*, 272 Neb. 41, 49, 717 N.W.2d 907, 915 (2006) (holding this formulation of the elements was a correct reflection of the law). The doctrine is not limited to discharge, and also includes claims for retaliatory demotion. *Trosper v. Bag 'N Save*, 273 Neb. 855, 866, 734 N.W.2d 704, 712 (2007).

The Supreme Court of Nebraska in *Jackson* relied on Nevada in developing the workers' compensation retaliatory discharge exception to the at-will employment doctrine. *Jackson,* 265 Neb. at 429 (quoting *Hansen v. Harrah's,* 100 Nev. 60, 675 P.2d 394 (1984). The language in *Hansen* is broad. In *Jackson*, the Court stated: "The Nevada court observed that if employers are permitted to penalize employees for filing workers' compensation claims, an important public policy would be undermined." *Id.* at 429. The public policy exception here likely applies to other discharge cases where significant employment rights are violated by an employer retaliating and discriminating after the filing of a workers' compensation claim. An action for retaliatory discharge is a tort action. *Wendeln v. The Beatrice Manor, Inc.*, 271 Neb. 373, 390, 712 N.W.2d 226, 241 (2006). Damages for wrongful discharge of an at-will employee are out-of-pocket loss of income and noneconomic damages for mental suffering. *See Wendeln,* 271 Neb. at 390-91.

It is uncontested that plaintiff filed a workers' compensation claim. Nebraska Workers' Compensation Court Decision, Filing No. 54-3. The Workers' Compensation Court found that plaintiff had been injured on the job and awarded plaintiff disability benefits and medical expenses. *Id.* Plaintiff has likewise shown that she arguably was required to wear too much protective gear, so much that it was detrimental to her and her

work, and that others were not required to wear protective gear pursuant to policy. Plaintiff argues that these requirements were directly related to both her ADA claim and her filing a worker's compensation claim. The plaintiff has not alleged demotion or termination, only an adverse employment action enough to satisfy the ADA.  In light of the broad language of *Hansen* adopted by *Jackson,* the Court reads Nebraska caselaw to allow recovery for retaliation short of demotion or termination.  Adverse employment action resulting from filing a workers' compensation claim violates the public policy of the State of Nebraska.  Accordingly, the defendant's motion for summary judgement is denied as to the plaintiff's worker's compensation retaliation claim.

THEREFORE, IT IS ORDERED that defendant's motion for summary judgment, Filing No. 47, is denied in its entirety.

Dated this 10th day of April 2020.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge